**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **NIALL LEDWIDGE, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 24-cv-00513 (APM)** |
| | ) | |
| **FEDERAL DEPOSIT INSURANCE** | ) | |
| **CORPORATION, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## <u>MEMORANDUM OPINION</u>

### I.

Plaintiffs Niall Ledwidge, Andrew Childe, and Michael Pearson, the Joint Official Liquidators ("Liquidators" or "JOLs") of the Cayman Islands Branch of the now-defunct Silicon Valley Bank or SVB ("Cayman Branch" or "SVB Cayman"), bring this suit against the Federal Deposit Insurance Corporation (FDIC) and several of its officials.[1]  Liquidators allege that Defendants improperly denied "insured deposit" status to Cayman Branch depositors following SVB's collapse.

Before the court are both Defendant FDIC's Motion to Dismiss the Amended Complaint, ECF No. 12, and the Individual Defendants' Motion to Dismiss Due Process Claim (Count VIII), ECF No. 15.  Because Plaintiffs lack standing, the court grants both motions.

---

[1] Silicon Valley Bank itself is also listed as a plaintiff.  But as this opinion will explain, only the FDIC—not Liquidators—can bring claims on behalf of SVB.

**II.**

The factual background of this case is detailed in related decisions. *See In re SVB Fin. Grp.*, 674 B.R. 111 (Bankr. S.D.N.Y. 2025); *Ledwidge v. FDIC*, No. 5:24-cv-08352-BLF, 2025 WL 3454837 (N.D. Cal. Dec. 1, 2025). The court incorporates those facts by reference here.

In brief, after SVB collapsed, the FDIC was appointed receiver and assumed "all SVB assets and liabilities." *Ledwidge*, 2025 WL 3454837, at *1. Eventually, the FDIC sent notice to some of SVB's Cayman Branch depositors "that their balances were not deposits" as defined by the Federal Deposit Insurance Act, "and therefore their status was that of general unsecured creditors junior to both insured and uninsured depositors (and thus they were unlikely to receive any recovery from the SVB receivership)." *In re SVB Fin. Grp.*, 674 B.R. at 123. Liquidators object to this determination.

Liquidators point to a "Winding-Up Order" issued by the Grand Court of the Cayman Islands as the source of their authority to bring this action. Am Compl., ECF No. 4 [hereinafter Am. Compl.], Ex. 2, ECF No. 4-2 [hereinafter Winding-Up Order]. In that order, the court appointed Ledwidge, Childe, and Pearson as Joint Official Liquidators for the purpose of winding up SVB's activities in the Cayman Islands. *Id.* The order provided that their "powers shall be limited to acting in respect of the assets and affairs of the Cayman Islands branch of [SVB] and its creditors." *Id.* at 2.

**III.**

The primary issue in this case is one of standing, as to which the Liquidators bear the burden. *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015). At this stage, the court will "accept the well-pleaded factual allegations as true and draw all reasonable inferences from those allegations in [their] favor." *Id.* The court will not, however, "assume the truth of legal

2

conclusions" or "accept inferences that are unsupported by facts set out in the complaint." *Id.* (internal quotation marks omitted).

Liquidators advance two theories of standing.  They assert that, pursuant to the Winding-Up Order, they "have standing to bring claims directly on behalf of SVB Cayman and to bring claims as the exclusive agent of all depositors-creditors of SVB Cayman." Am Compl. ¶ 5.  Both theories fail.

*On behalf of SVB Cayman.*  When the FDIC was appointed SVB's receiver, it "succeed[ed] to . . . all rights, titles, powers, and privileges of the insured depository institution."  12 U.S.C. § 1821(d)(2)(A)(i).  The FDIC is therefore the only entity that may sue to directly assert SVB's rights.  Those rights include those that might derive from the Cayman Branch, which Liquidators concede was part of SVB rather than a separately incorporated entity.  *See* Pls.' Mem. of L. in Opp'n to Defs.' Mots. to Dismiss, ECF No. 31 [hereinafter Pls.' Opp'n], at 4 n.3.  Liquidators thus lack standing to sue on behalf of SVB Cayman.  *See Ledwidge*, 2025 WL 3454837, at *3.

Liquidators primarily counter that claims against the FDIC for misconduct as receiver are "routinely recoverable."  Pls.' Opp'n at 36.  But neither of the cases on which Liquidators rely involved plaintiffs attempting to sue on behalf of the entity for which the FDIC had become the receiver.  *See id.* at 36–37 (first citing *Lopez-Flores v. Resolution Tr. Corp.*, 93 F. Supp. 2d 834 (E.D. Mich. 2000); then citing *Homeland Stores, Inc. v. Resolution Tr. Corp.*, 17 F.3d 1269 (10th Cir. 1994)).  Liquidators also emphasize the nature of their claims as a reason to confer standing to sue on behalf of SVB.  They highlight the "extraordinary actions of the Defendants" and the "Cayman-centric issues at the heart of this case." *See id.* at 35, 37–38.  And they assert that "it is a temporal and legal impossibility" for the FDIC to have succeeded to their "Clawback Claims," which "are *solely* available to joint official liquidators" and did not arise until after the FDIC was

appointed receiver. *Id.* at 38. But neither the characteristics of the claims nor the time at which they arose change the unambiguous statutory language dictating that the FDIC succeeds to "all" of SVB's rights.[2] *See In re Grand Jury Subpoena*, 912 F.3d 623, 628 (D.C. Cir. 2019) (per curiam) (explaining that "all" means "all"). Accordingly, only the FDIC—not Liquidators—has standing to assert them.

*On behalf of depositors.* As to their agency theory, Liquidators are collaterally estopped from asserting it. Collateral estoppel prevents parties from relitigating issues that have been (1) "contested by the parties and submitted for judicial determination in [a] prior case" and (2) "actually and necessarily determined by a court of competent jurisdiction in that prior case." *Aenergy, S.A. v. Republic of Angola*, 123 F.4th 1351, 1356 (D.C. Cir. 2024) (quoting *In re Subpoena Duces Tecum Issued to Commodity Futures Trading Comm'n*, 439 F.3d 740, 743 (D.C. Cir. 2006)). Preclusion also "must not work a basic unfairness to the party bound by the first determination." *Id.* The doctrine applies to "questions of jurisdiction" like standing. *Cutler v. Hayes*, 818 F.2d 879, 888 (D.C. Cir. 1987). In fact, "[a] valid jurisdictional judgment has preclusive effect . . . even if erroneous." *Id.*

On the first requirement, Liquidators have submitted this issue for prior judicial determination not once, but twice. *See* Notice of Suppl. Authority, ECF No. 42; Notice of Suppl. Authority, ECF No. 43. Before the Bankruptcy Court in the Southern District of New York, Liquidators asserted that they had standing "pursuant to the ordinary tenets of agency law in the Cayman Islands, and as envisioned in the Winding Up Order." *In re SVB Fin. Grp.*, 674 B.R. at

---

[2] Liquidators also reason that, "as a practical matter, it beggars belief for FDIC-R to somehow argue that it has the right to bring the Clawback Claims, or any of the other claims of the JOLs on behalf of SVB, when FDIC-R is the *target of these claims*." Pls.' Opp'n at 38. That alone, however, does not render the FDIC unable to succeed to them. *See Perry Cap. LLC v. Mnuchin*, 864 F.3d 591, 625 (D.C. Cir. 2017) (interpreting a "nearly identical" provision and holding that that the agency-receiver succeeded to claims even where it would not pursue them against itself).

143. And before the Northern District of California, Liquidators argued "they possess[ed] agency standing as the duly appointed agents of the SVB Cayman Accountholders as a matter of Cayman Islands law." *Ledwidge*, 2025 WL 3454837, at *3.

On the second requirement, the bankruptcy court "actually and necessarily determined" the issue. Following a two-day evidentiary hearing, it noted that "both [parties'] experts agree that an order of the Cayman court—any order—*cannot* create an agency relationship between the JOLs and the Cayman creditors." *In re SVB Fin. Grp.*, 674 B.R. at 159–60. It specifically discussed a notice Liquidators distributed to the depositors stating that:

> In order to avoid any doubt as to the appointment of the JOLs as your agents in this regard and to have the same ratified, unless you complete and return the form below 'opting out', it will be taken that you acknowledge and confirm <u>that the Order dated 30 June 2023 [the Winding-Up Order] appointed the JOLs as your agents</u> for the purposes of recovering and distributing your deposits, asserting and conducting any relevant legal or insolvency claims concerning the same deposits, and representing your interests in all relevant matters related to the winding-up of SVB Cayman and Silicon Valley Bank.

*Id.* at 161. Yet "both experts testified that this is a misstatement of Cayman law as the Winding-Up Order *could not* appoint the JOLs as the creditors' agents." *Id.* In fact, "no Cayman or English court has *ever* found a liquidator to be acting as a creditor's agent, by the mutual admission of both experts." *Id.* at 162. Therefore, in the absence of other evidence that Liquidators had established a principal–agent relationship with the depositors, the court determined that Liquidators "did not bear their burden of proof in establishing that they have standing under Cayman law to bring claims on behalf of the Cayman creditors." *Id.* And the court's decision on standing—a prerequisite to reaching the merits—was necessary to its judgment. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101–02 (1998); *Swanson Grp. Mfg. LLC v. Jewell*, 195 F. Supp. 3d 66, 73 (D.D.C. 2016).

This court is not the first to hold that Liquidators' standing was "actually and necessarily determined" by the bankruptcy court.  When Liquidators pressed their agency theory before the Northern District of California, the court held that they were collaterally estopped from doing so. It reasoned that "the issue at stake before the Bankruptcy Court was identical" and that the "decision on standing was necessary to the merits of the Bankruptcy Order, since it is a jurisdictional issue that is a prerequisite to any of the claims asserted in those proceedings." *Ledwidge*, 2025 WL 3454837, at *4.  This court agrees.

Lastly, preclusion does not work a basic unfairness to Liquidators.  Again, they have now had "a full and fair opportunity" to litigate this issue before two separate courts of competent jurisdiction.  *Cutler*, 818 F.2d at 888 (quoting *Montana v. United States*, 440 U.S. 147, 153–54 (1979)).  The bankruptcy court held a two-day evidentiary hearing and received extensive briefing. *In re SVB Fin. Grp.*, 674 B.R. at 119; *see also Ledwidge*, 2025 WL 3454837, at *4 ("Tellingly, Plaintiffs fail to identify even a single piece of evidence that they were purportedly barred from presenting to the Bankruptcy Court.").  And, although it primarily concluded that Liquidators were estopped from asserting their agency theory of standing, the Northern District of California also provided independent reasoning as to why Liquidators "fail to allege that they possess either Article III or prudential standing."  *Ledwidge*, 2025 WL 3454837, at *5.  The court need not provide Liquidators a third bite at the apple.  The court thus concludes that Liquidators are estopped from asserting their agency theory in this case.

Even if preclusion did not apply, the court would reach the same result.  Liquidators have not presented persuasive evidence that would allow the court to plausibly conclude that a principal–agent relationship exists under Cayman law.  The Winding-Up Order is ambiguous on this score; it states only that Liquidators' "powers shall be limited to acting in respect of the assets

and affairs of the Cayman Islands branch of [SVB] and its creditors." Winding-Up Order at 2. Liquidators offer only Ledwidge's declaration to explain the legal effect of the Winding-Up Order under Cayman law. Decl. of Niall Ledwidge in Supp. of Pls.' Opp'n, ECF No. 30 [hereinafter Ledwidge Decl.], ¶ 62 ("It is well accepted that upon a winding up order being made, the assets of the company are impressed with a statutory trust in the sense that they constitute a fund to be administered by the liquidator as officer of the court and agent for all persons interested in the winding up."); *id.* ¶ 93 ("[T]he JOLs are the exclusive agent on behalf of depositors under Cayman law by virtue of the issuance of the Winding Up Order on June 29, 2023."); *id.* ¶ 201 ("Based on my understanding of Cayman Islands law as a Grand Court appointed fiduciary and insolvency practitioner the JOLs are fully empowered to act as agents of the customers-depositors of SVB Cayman."); *id.* ¶ 217 ("Each of the Cayman depositors who the JOLs represent participated in the Cayman Proceeding and have implicitly ratified the agency relationship with the JOLs."). But the court gives his declaration no weight. For starters, Ledwidge does not hold himself out as an expert in Cayman law. He is an accountant. *See* Ledwidge Decl., Ex. 1, ECF No. 30-1, at 92:5-9. And regardless, the court need not accept his legal conclusions as true. *See Arpaio*, 797 F.3d at 19. Instead, the court is empowered to reach its own determinations as to foreign law. *See* Fed. R. Civ. P. 44.1. The bankruptcy court took testimony from Cayman-law experts, and it concluded that the Winding-Up Order did not grant Liquidators the authority to act as the depositors' agents. *See In re SVB Fin. Grp.*, 674 B.R. at 159–62. This court is persuaded by the bankruptcy court's legal determination and reasoning and therefore independently finds that Liquidators lack standing to assert claims on behalf of the Cayman depositors.

Additionally, Liquidators lack prudential standing to sue on behalf of the Cayman Branch depositors. When asserting the rights of third parties, a plaintiff must demonstrate, among other

requirements, that there "exist[s] some hindrance to the third party's ability to protect his or her own interests." *Powers v. Ohio*, 499 U.S. 400, 410–11 (1991). But Liquidators themselves acknowledge that the FDIC received 605 timely claims from Cayman Branch depositors during the administrative process. Am. Compl. ¶ 88. There thus do not appear to be "considerable practical barriers" or other obstacles preventing depositors from bringing their own claims. *Powers*, 499 U.S. at 415. Evidently, many did. For this additional reason, Liquidators do not have standing to sue on behalf of the Cayman Branch depositors. *See Ledwidge*, 2025 WL 3454837, at *5.

**IV.**

For the foregoing reasons, Defendants' Motions to Dismiss, ECF Nos. 12 and 15, are granted. Plaintiffs' Motion for Leave to Correct Case Caption, ECF No. 32, is accordingly denied as moot. A final, appealable order accompanies this Memorandum Opinion.

Dated: May 12, 2026

Amit P. Mehta
United States District Judge

8